UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

YARBROUGH, et al.,

**Plaintiffs,**

v.                                4:10-cv-129

ACTAVIS TOTOWA, LLC, et al.,

**Defendants.**

## ORDER

## I. INTRODUCTION

Plaintiffs are the estate and various relatives of Ms. Mary Jane Bennett Yarbrough, an individual who died allegedly as a result of the use of a prescription medication, Digitek, which is a drug intended to treat heart disease in various forms. *See* Docs. 1-3, 1-4 (Complaint filed in the State Court of Chatham County, Georgia).

Plaintiffs filed a complaint against the drug manufacturers allegedly involved in the production or sale of Digitek, several pharmacies that allegedly sell Digitek, and the elder care facility where Ms. Yarbrough was staying at the time she ingested the drug. *See id.* In the Complaint, Plaintiffs allege claims for strict liability, negligence, breach of implied warranty, and breach of express warranty, among others. *See id.*

Plaintiffs' Complaint names fourteen Defendants: (1) Actavis Totowa, LLC; (2) Actavis, NC.; (3) Actavis Elizabeht [sic], LLC; (4) Actavis, hf,; (5) Actavis, Inc.; (6) Mylan, Inc.; (7) Mylan Pharmaceuticals, NC.; (8) Mylan Bertek Pharmaceuticals, NC.; (9) UDL Laboratories, NC.; (10) Senior Care Pharmacy of Statesboro; (11) Guardian Pharmacy of Southeast Georgia, LLC: (12) Senior Care Pharmacy Consultants, LLC; (13) Guardian Pharmacies, LLC; and (14) Buckingham South, Inc. *See* Doc. 1-3.

Of those Defendants, only seven joined in the removal of the action from the State Court of Chatham County to this Court (the "Removing Defendants"): (a) Actavis Totowa, LLC; (b) Actavis Elizabeth, LLC; (c) Actavis, Inc.; (d) Mylan, Inc.; (e) Mylan Pharmaceuticals, Inc.; (f) Mylan Bertek Pharmaceuticals, NC.; (g) UDL Laboratories, Inc. The Removing Defendants apparently claim that Actavis, NC. and Actavis, hf are fictitious entities. *See* Doc. 1 at 10 (stating that the "Complaint includes a number of fictitious defendants, whose citizenships are ignored for removal purposes").

The Removing Defendants then allege that most of the remaining defendants are non-diverse and have been fraudulently joined, and thus their citizenship should be disregarded for purposes of determining diversity jurisdiction. *See id.* at 11. The non-diverse defendants are all citizens of the State of Georgia, and include: Senior Care Pharmacy of Statesboro; Guardian Pharmacy of Southeast Georgia, LLC: Senior Care Pharmacy Consultants, LLC; and Buckingham South, Inc.[1] *See* Doc. 1 at 10; Doc. 1-3 at ¶¶ 69-71, 89.

---

[1] Plaintiffs allege that Guardian Pharmacies, LLC is a foreign limited liability company, but do not indicate its state of organization. *See* Doc. 1-3 ¶ 72.

Along with the removal papers, the Removing Defendants filed a motion to stay the case pending the outcome of a conditional transfer order referring the case to the Multidistrict Litigation Panel ("MDL Panel"). [2] *See* Doc. 1-6. Since that time, several of the non-diverse defendants have filed motions to dismiss the Complaint. *See* Doc. 6 (Motion to Dismiss filed by Defendants Senior Care Pharmacy of Statesboro, Guardian Pharmacy of Southeast Georgia, LLC, and Guardian Pharmacies, LLC); Doc. 8 (Motion to Dismiss filed by Defendant Buckingham South, Inc.). On June 8, 2010, the undersigned granted the joint motion to stay the case. *See* Doc. 11.

Despite the stay, the parties continued to file documents with the Court—Plaintiffs filed a motion for leave to amend the Complaint (*see* Doc. 16), and the elder care facility filed a motion requesting that the Court: (1) strike documents filed after the order staying the case, and (2) clarify whether the Court would rule on the drug manufacturer's request that the Court sever the claims against the pharmacies and remand those claims to state court (*see* Doc.19).

On July 19, 2010, the Magistrate Judge entered an Order considering the two post-stay motions. *See* Doc. 21. He denied the motion to strike, and deferred the motion for leave to amend to this Court, suggesting that the motion for leave to amend would more properly be decided with the motions to dismiss. *See id.* at 5. As for clarifying the issue of severing and remanding the claims against the pharmacies, the Magistrate Judge explained that because no motion to sever or motion to remand had been filed, the Court would not entertain such actions. Doc. 21 at 4 n.3. Although the Magistrate Judge is correct that the Court will not decide matters that have not been properly presented, a critical part of this determination is deciding whether the Court has jurisdiction over the dispute. Here, two Motions to Dismiss and a Motion for Leave to Amend are currently pending.

## II. **<u>JURISDICTION</u>**

Although Plaintiffs have not challenged this Court's removal jurisdiction, before the Court can decide the pending motions, it must first determine whether it has the authority to do so. *See Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004) (stating that courts are "obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking"); *see also Univ. of So. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (noting that "removal jurisdiction is no exception to a federal court's obligation to inquire into its own jurisdiction").

The Eleventh Circuit has noted that "there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1050 (Cir. 11th 2001) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)). This "presumption in favor of remand is necessary because if a federal

---

[2] The MDL Panel plans to consider the transfer of this case at its meeting set for September 30, 2010. *See* Doc. 23 at 11.

court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts." *Univ. of So. Alabama*, 168 F.3d at 411.

Here, the Removing Defendants allege that this Court has subject matter jurisdiction on the basis of diversity. *See* Doc. 1 at 5. In order to establish the Court's jurisdiction on this basis, the Removing Defendants must show that: (1) the amount in controversy exceeds $75,000, and (2) the parties are completely diverse. *See* 28 U.S.C. § 1332(a). For purposes of this analysis, the Court assumes, without deciding, that the requisite amount in controversy has been satisfied.

The Removing Defendants' assertion of complete diversity is based on the following: the Plaintiffs are all citizens of the State of Georgia (Doc. 1 at 10), none of the Removing Defendants is a citizen of the State of Georgia (*id.* at 7-10), and the citizenship of the remaining defendants is disregarded because they are each either fictitious or have been fraudulently joined (*id.* at 10, 11). *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity.").

In order to establish diversity jurisdiction in a case involving fraudulent joinder, the removing parties must prove that either: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant[s]; or (2) the plaintiff[s] have fraudulently pled jurisdictional facts to bring the resident defendant[s] into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The Removing Defendants have the heavy burden of establishing fraudulent joinder with clear and convincing evidence. *Id.*

The standard for making such an evaluation is similar to the summary judgment standard—"the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Id.*

Importantly, however, the Court is "not to weigh the merits of the plaintiff[s'] claims beyond determining whether it is an arguable one under state law." *Id.* The Court makes its determination "based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties." *Id.*

Here, the Removing Defendants do not claim that Plaintiffs have fraudulently pled jurisdictional facts. Instead, the Removing Defendants argue that there is no possibility that Plaintiffs can maintain the alleged claims against any of the non-diverse defendants.

"If there is even a possibility" that the Complaint states a viable cause of action against any of the Georgia defendants, "the federal court must find that joinder was proper and remand the case to state court." *Id.* (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir.1983), *superseded by statute on other grounds as stated in*

3

*Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir.1993)).

### A. Fraudulent Joinder of the Pharmacy Defendants

The Removing Defendants first argue that Plaintiffs cannot maintain claims against Senior Care Pharmacy of Statesboro; Guardian Pharmacy of Southeast Georgia, LLC; Senior Care Pharmacy Consultants, LLC; and Guardian Pharmacies, LLC (the "Pharmacy Defendants") because pharmacies have no post-sale duty to warn under Georgia law. *See* Doc. 1 at 12.

Plaintiffs allege that the Pharmacy Defendants are liable to them pursuant to the duties imposed on pharmacies by O.C.G.A. § 26-4-80, stating:

> Upon information and belief, the pharmacies as part of the required duties imposed upon it [sic] under Georgia Pharmacy Practice Act, O.C.G.A. § 26-4-80 knew or should have known the available name, address, telephone number of the practitioner prescribing said medication, name, address and telephone number of the responsible party at Buckingham South as customer and the name, address and telephone number of Mary Jan Bennett Yarbrough the decedent and contacted them or their representative concerning the recall.

*See* Doc. 1-3 ¶ 85.

In addition, Plaintiffs allege the Pharmacy Defendants' negligence: "[t]he Defendant pharmacies negligent actions, or omissions to act in order to prevent Mary Jane Bennett Yarbrough from consuming the defective product and failure to exercise reasonable prudent care under the notification process which caused the pain and suffering and the ultimate death of the decedent, Mary Jane Bennett Yarbrough." *Id.* ¶ 87.

While it is true that O.C.G.A. § 26-4-80(c)(2)[3] requires that prescription drug orders include certain information, such as the patient's name and contact information, the code section requires the information for the purpose of accepting and filling the prescription. The statute does not impose a duty on pharmacies to retain such information for purposes of contacting patients or health care providers in the event of a drug recall, or to provide notice of any

---

[3] (2) Prescription drug orders transmitted by facsimile or computer shall include:

(A) In the case of a prescription drug order for a dangerous drug, the complete name and address of the practitioner;

(B) In the case of a prescription drug order for a controlled substance, the complete name, address, and DEA registration number of the practitioner;

(C) The telephone number of the practitioner for verbal confirmation;

(D) The name and address of the patient;

(E) The time and date of the transmission;

(F) The full name of the person transmitting the order; and

(G) The signature of the practitioner in a manner as defined in regulations promulgated by the board or, in the case of a controlled substances prescription, in accordance with 21 C.F.R. 1301.22

4

such recalls. *See generally* O.C.G.A. § 26-4-80.

The questions then become whether the Pharmacy Defendants had a common law duty to maintain the information or provide notice of the recall, and whether they negligently failed to do so.

Under Georgia law, a product seller has a duty to warn "only of dangers actually or constructively known at the time of the sale." *DeLoach v. Rovema Corp.*, 241 Ga. App. 802, 804 (2000). "The seller is required to warn if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge of the danger." *Bishop v. Farhat*, 227 Ga. App. 201, 206 (1997) (citations omitted). As a logical extension of that rule, product sellers are not required to issue recalls for defective products, but if a seller chooses to do so voluntarily, it must act reasonably. *See Smith v. Ontario Sewing Mach. Co.*, 249 Ga. App. 364, 373 (2001) (disapproved on other grounds in *Ford Motor Co. v. Reese*, 300 Ga. App. 82 (2009)).

Here, Plaintiffs have failed to allege that any of the Pharmacy Defendants had actual or constructive knowledge of the allegedly defective Digitek at the time of sale. Further, Plaintiffs have presented no evidence that a of the Pharmacy Defendant voluntarily instituted a Digitek recall, thereby creating any duty to inform the decedent of any defects.

Because the Court sees no possibility that Plaintiffs can recover against the Pharmacy Defendants on either of the theories asserted in the Complaint, the Pharmacy Defendants have been improperly joined in this action.

## B. Fraudulent Joinder of the Elder Care Facility Defendant

The Removing Defendants argue that Buckingham South, Inc. (the "Elder Care Facility Defendant") was improperly joined for two reasons: (1) the factual allegations concerning the Elder Care Facility Defendant's actions are too inconsistent to support a claim, and (2) Plaintiffs' negligence claims against the Elder Care Facility are legally deficient because the claims are not supported with an expert affidavit, as required by O.C.G.A. § 9-11-9.1. *See* Doc. 1 at 14-15.

### 1. Inconsistent Allegations

The Removing Defendants argue, and cite several cases for the proposition, that inconsistent or contradictory factual allegations cannot support a claim for relief. *See* Doc. 1 at 14-15, citing *Greene v. Novartis Pharms. Corp.*, No. 7:07-cv-0091, 2007 WL 3407429 (M.D. Ga. Nov. 14, 2007); *Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759 (S.D. W. Va. 2003); *Betts v. Eli Lilly and Co.*, 435 F. Supp. 2d 1180, 1190 (S.D. Ala. 2003).

In *Baisden*, the plaintiff patient brought claims against Bayer Corporation for manufacturing, marketing, and distributing a drug that caused kidney damage, among other effects. *See Baisden*, 275 F. Supp. 2d at 761. In her allegations against Bayer, the plaintiff claimed that the company knew or should have known about the dangers presented by the drug, but withheld that information from doctors and the public. *Id.*

In addition, she alleged medical malpractice against her doctor. *Id.*

The court in *Baisden* cites to a line of cases in which "courts have denied remand based on fraudulent joinder because a premise of the claim asserted against the non-diverse defendant is knowledge of the dangers posed by the drug at issue—a knowledge withheld from them by the co-defendant drug company. . . ." *Id.* at 762. Ultimately, the court dismissed the defendant doctor as fraudulently joined on the basis that "the claims against the manufacturer and the claims against the doctor, as stated in the Amended Complaint, cannot both be true." *Id.* at 763. Put another way, under this reasoning, "a physician has no duty to warn of dangers of which he could not have known." *Betts*, 435 F. Supp. 2d at 1190.

The courts in both *Betts* and *Greene* distinguish *Baisden* on the basis that the plaintiffs' claims in each case were not contradictory.

In *Greene*, the plaintiff did not allege that the defendant drug manufacturer withheld prescribing instructions from doctors; therefore, a claim of negligence against the defendant doctor did not contradict a claim against the manufacturer. *Greene*, 2007 WL 3407429 at *3. As the court explained, the claims were not "mutually exclusive." *Id.* at *2.

Similarly, in *Betts*, the court rejected the defendants' claim of fraudulent joinder on the basis that the plaintiffs adequately alleged a source of information about the drug in addition to the information provided (or not provided) by the manufacturer. As such, an allegation that the manufacturer withheld information did not preclude the doctor's knowledge. *Betts*, 435 F. Supp. 2d at 1190-91.

Here, Plaintiffs claim that the Elder Care Facility Defendant "agreed to provide prescription monitoring service" and "untook [sic] to arrange and accept pharmaceutical purchasers [sic], inventory and account for and [sic] to provide safe administration and monitoring of medicine did administer the drug Digoxin to the resident Mary Jane Bennett Yarborough." Doc. 1-4 ¶ 96.

The Complaint continues: "Buckingham South personnel were negligent, not qualified to administer said medication and did not administer the medication in a safe reasonable manner in accordance with drug labeling." *Id.* ¶ 99.

The Removing Defendants allege that Plaintiffs' claims against the Elder Care Facility Defendant are inconsistent with allegations appearing earlier in the Complaint, and thus, their claims against the Elder Care Facility Defendant cannot be maintained. Specifically, the Removing Defendants point to the following statement as creating a fatal inconsistency: "The Digoxin was used by the decedent, Mary Jane Bennett Yarborough in accordance with their labeling instructions and for the purpose for which the said drugs were intended." *Id.* ¶ 79.

The Court declines to read *Baisden* as broadly as the Removing Defendants' position requires. While Plaintiffs' allegations are perhaps inelegant, they are not so inconsistent as to foreclose any viable

claim against the Elder Care Facility Defendant. A statement that the decedent was not negligent in following labeling instructions does not compel the conclusion that the Elder Care Facility Defendant was also not negligent.

Even assuming, however, that the Elder Care Facility Defendant's negligence with respect to following labeling instructions cannot be reconciled with Plaintiffs' statement that the decedent properly followed the instructions, it cannot fairly be said that such a statement is contradictory to the full range of potentially negligent behavior alleged by Plaintiffs against the Elder Care Facility Defendant.

### 2. Professional Affidavit Requirement

The Removing Defendants also argue that the Elder Care Facility has been fraudulently joined because Plaintiffs failed to include a professional affidavit in support of those claims. *See* Doc. 1 at 15.

Compliance with the affidavit requirement of O.C.G.A. 9-11-9.1 is not required to meet federal pleading standards. *See Baird v. Celis*, 41 F. Supp. 2d 1358, 1362 (N.D. Ga. 1999) ("[R]equiring an expert affidavit to be filed with a complaint for professional malpractice, is in direct conflict with Federal Rule of Civil Procedure 8(a) which requires only notice pleading. As a result of this conflict, this Court is bound by [*Hanna v. Plumer*, 380 U.S. 460 (1965)] to adhere to the Federal Rule of Civil Procedure governing Plaintiff's pleading obligations. Therefore, Plaintiff is not bound by O.C.G.A. § 9-11-9.1 in this Court. . . ."); *Boone v. Knight*, 131 F.R.D. 609, 610 (S.D. Ga. 1990) (denying defendants' motion to dismiss on the basis "that § 9-11-9.1 does not control pleadings in federal court").

Plaintiffs' failure to include a professional affidavit, therefore, does not render their negligence claims against the Elder Care Facility Defendant legally deficient, and certainly does not support a finding of fraudulent joinder.

The Elder Care Facility Defendant, therefore, was not fraudulently joined, and its citizenship should not be disregarded on that basis for purposes of determining diversity jurisdiction.

### C. Procedural Misjoinder of the Elder Care Facility Defendant

The Removing Defendants next argue that even if the Elder Care Facility Defendant was not fraudulently joined, its citizenship should be ignored for purposes of determining diversity jurisdiction because it has been procedurally misjoined. *See* Doc. 1 at 17.

In *Tapscott v. MS Dealer Service Corporation*, the Eleventh Circuit recognized procedural misjoinder as a form of fraudulent joinder, defining it as the "fraudulent joinder of a resident defendant having no real connection with the controversy." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)), abrogated on other grounds by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). *See also Stone v. Zimmer, Inc.*, No. 09-80252-CIV, 2009 WL 1809990, *2 (S.D. Fla. June 25, 2009) (defining procedural misjoinder as

"a purposeful attempt to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal, and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard provided under Rule 20 of the Federal Rules of Civil Procedure").

Although the boundaries of procedural misjoinder have not been well-defined, the Court begins its inquiry by considering whether the Elder Care Facility Defendant is properly joined in this action. *See id.* at 2-3 (noting the ambiguity in the procedural misjoinder standard).

Under Federal Rule of Civil Procedure 20(b):

> Persons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

In addition to considering whether Plaintiffs have complied with the letter of Rule 20, in order to rise to the level of fraudulent misjoinder, joinder must be not only improper, but also egregious. *Tapscott*, 77 F.3d at 1360 (finding egregious misjoinder where two groups of plaintiffs asserted claims against different defendants and had no common questions of fact). *See also Brooks v. Paulk & Cope, Inc., et al*, 176 F. Supp. 2d 1270, 1277 (M.D. Ala. 2001) (rejecting a claim of egregious misjoinder where plaintiffs asserted claims against all defendants).

The Removing Defendants argue that the Elder Care Facility has been misjoined because "the medical negligence claim brought against Buckingham South does not arise out of the same transaction or occurrence as the products liability claims brought against the Digitek® defendants," which will "center on the design, manufacturing and warnings of Digitek®." *See* Doc. 1 at 20. The Court disagrees, and finds that the Elder Care Facility has been properly joined in this action.

Since the Eleventh Circuit issued the *Tapscott* decision, several district courts in the Eleventh Circuit have applied the concept of procedural, misjoinder in the context of products liability and medical negligence actions.

In *Stone v. Zimmer, Inc.*, for example, the plaintiff sued the manufacturer of a hip replacement which fractured after implantation and the doctor who treated him for pain but failed to diagnose the fracture. *Stone v. Zimmer, Inc.*, No. 09-80252, 2009 WL 1809990 (S.D. Fla. June 25, 2009). The court held that products liability claims against the manufacturer and professional negligence claims against the doctor were misjoined because the faulty hip implant and the delay in surgery caused by the doctor's negligence caused two distinct injuries which required different forms of proof. *Stone*, 2009 WL 1809990, at *4. Here, however, Plaintiffs allege only one injury— Ms. Yarbrough's ingestion of excessive

amounts of Digitek, which resulted in her suffering and eventual death.

In a decision the Court considers more analogous to the case at bar, the plaintiff suffered an adverse reaction to heparin, a drug administered during heart surgery, which resulted in the amputation of his right arm. *Ash v. Providence Hospital*, No. 08-05250-WS-M, 2009 WL 424586 (S.D. Ala. Feb. 17, 2009). In *Ash*, the court held that the manufacturing defendant and the health care provider defendants were properly joined because the plaintiff sought recovery "for a single injury, to wit, the personal injuries he sustained after being administered heparin during his surgery." *Id.* at *8. The Court identified the surgery, the administration of heparin, and the resulting injuries, as the common transaction or occurrence for purposes of joinder under Rule 20. *Id.*

Similarly, in *Yates v. Medtronic*, the court held that the plaintiffs' products liability and malpractice claims were properly joined in a wrongful death action. *Yates v. Medtronic, Inc.*, 2008 WL 4016599, No. CA 08-0337-KD-C (S.D. Ala. Aug. 26, 2008). The decedent in *Yates* died as a result of surgery to remove a malfunctioning pacemaker. The court concluded that the products liability claims and the medical malpractice claims were "logically related" because "the pivotal question . . . will be who, if anyone, is responsible for plaintiff's death as a result of complications arising from [the surgery]," the manufacturers of the allegedly defective device or the medical defendants who performed the surgery to remove it. *Id.* at *9.

Like the plaintiffs in *Ash* and *Yates*, though Plaintiffs assert multiple theories for recovery in the Complaint against multiple defendants, those theories are logically related and allege only one injury.

More specifically, Plaintiffs allege that the Elder Care Facility Defendant was negligent in administering the drug in a safe manner. *See* Doc. 1-4 at ¶ 99. Whether the Elder Care Facility Defendant was negligent in this regard depends, in part, on what information about the drug was made available to it. Determining what the Elder Care Facility Defendant knew or should have known in administering the drug, of course, requires an analysis of the information made available by the Removing Defendants. Thus, the claims against the Removing Defendants and the Elder Care Facility Defendant involve related questions of fact.

For the foregoing reasons, the Court holds that the Elder Care Facility Defendant has not been fraudulently misjoined. Because the Elder Care Facility Defendant is a proper party to this action and is a domestic corporation in the State of Georgia, complete diversity does not exist, and this Court does not have jurisdiction over the dispute.

### III. MOTIONS TO DISMISS AND MOTION FOR LEAVE TO AMEND

Because the Court does not have jurisdiction over this case, it will not decide either the Motions to Dismiss or the Motion for Leave to Amend.

The case is hereby **DISMISSED AND REMANDED** to the State Court of Chatham County.

This 13th day of September 2010.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA